Case Numbers 233324 and 233417, Office of the Ohio Consumers v. FERC. Argument is 10 minutes to be shared by petitioner and intervener and 10 minutes for respondent. Ms. Goulet, you may proceed for the petitioner. Good morning, Your Honors, and may it please the Court, my name is Denise Goulet. I represent the Office of the Ohio Consumers Council, also referred to as OCC. We brought the complaint against AEP, First Energy, and Duke to get the RTO adders out of their transmission rates for Ohio consumers. We're also a petitioner in these cases, and I'm sharing three minutes of my time with my counsel that intervened on behalf of us, Buckeye, and I'm reserving two minutes for rebuttal. Your Honor, FERC's ruling regarding First Energy and Duke arbitrarily allows them to receive millions in an unnecessary incentive to do what the Ohio law already requires them to do. By definition, an incentive is not needed when behavior is required by law. FERC's incentive for encouraging participation in an RTO is unnecessary for Ohio utilities, and FERC agrees with us on that. But that's just as true for First Energy and Duke as it is for AEP and Dayton. FERC says that First Energy and Duke, at page 66 of its brief in this case, First Energy says that Duke and First Energy would be ineligible in future cases because of the Ohio law. But the question is, why not now? That law has been... The settlement was a negotiated settlement and included the adder as part of this overall overarching settlement. Yes, Your Honor, but FERC's ruling there is an unexplained departure from its prior precedent. In cases of formula rate settlements such as where the settlement's below, FERC has already unscrambled that egg. FERC has allowed single issue challenges to a component of the settlement, meaning the rate of return, in situations where that rate of return is a stated element. It's called a stated value of the settlement. The RTO adder here is also a stated value of the settlement. And our argument is in this situation, the court... I'm sorry, FERC is not requiring parties... Let's set aside the RTO adder for a minute and let's focus on the fact that this is a case just about return. If we were just challenging the return, even though there are other stated elements of a formula rate settlement such as depreciation rates, FERC is not saying that in order to challenge return, we also have to challenge other stated values. We only have to challenge return. Here, FERC is saying that in order to challenge the stated value of the RTO adder, we also have to challenge the overall return. And that is not required by the law. The D.C. Circuit in... But isn't FERC's argument that this is not a stated value because it's just too hard to figure out exactly what it is in the context of this whole settlement? Thank you for that question, Your Honor, because it's not that hard to figure this out. With respect to Duke, their settlement actually states that the base return is... I don't remember the exact numbers, but the base return is X and the RTO adder is 50 basis points. With respect to First Energy, their statement says that the overall return is X and that includes any RTO adder. And you heard this morning, all the parties have agreed that the RTO adder is 50 basis points. When we say settlement, what is that? Is it a bilateral contract? Is it an agreement? Is somebody going to be in breach? A settlement is an agreement among the parties, and this is a very important point as well. The settlement for both of these cases put a moratorium on the ability to challenge the elements of the settlement. Duke ended in June 1st of 2017. First Energy's moratorium ended on January 1st of 2018. We brought this complaint in 2022. It was long after. We are not violating the settlement. We have the right under Section 206 of the Federal Power Act... But is somebody violating the settlement if the 50 point adder is taken away from them? Aren't they damaged like any other contract breach? Your Honor, what that assumes is you would never be able to challenge the settlement rate. The settlement rate would be in effect in perpetuity, and that's not the law. Does the settlement say how long the rate was in effect? Yes, the settlement says for Duke that it was in effect until June 1st of 2017, and the settlement for First Energy says it was in effect until June 1st of 2018. So the dates that you gave us are the dates? Yes, those are the dates that the settlement expired. After that, the utility companies are free to file a rate case to increase any of these rates, and consumers are free to file a Section 206 complaint to challenge the inclusion of any element of the rate. If there were no challenges filed, would those rates remain in effect in perpetuity? Unless the utility came in and filed to change it, or unless a challenge, yes. And so there were no other challenges other than the OCC challenge? With respect to these three companies, that is correct. We challenged it. After FERC made clear in the Dayton proceeding that that RTO adder has no place in the rates of Ohio transmission utilities because of the Ohio law, it became very clear that the companies were no longer eligible for that, and because they are no longer eligible, that is an unlawful rate. All we have to do to prove that the existing rate is unjust and reasonable under the AmeriMain case issued by the D.C. Circuit Court, all we have to show is that the rate is unlawful, and we have shown it is unlawful because even under FERC's own policy, these utilities are not entitled to that. Voluntary participation is a requirement. Not only by Order 679, it is also required by Section 219 itself. One thing I didn't hear discussed earlier this morning was Section 219D of the statute is also a very relevant part. Section 219A deals with what Mr. Wright was talking about, which is we are going to give you an incentive to build. That is Section 219A, maybe Section 219B. Section 219C is completely different. Section 219C says we are going to give you this adder to be part of an RTO. And then when you come down to Section 219D, D says that no matter what any of those incentives, they have to be consistent with the requirements of FPA Section 205 and 206, which require that the rates be just and reasonable. It is not just and reasonable to give millions of consumer dollars to these utilities in order to do what Ohio law already requires them to do. Thank you. Thank you. May it please the Court. Jeff Bain arguing for Buckeye Power Incorporated. And Buckeye was one of the parties to these settlements, so I would like to explain how these settlements actually work, because there are specific provisions that address future changes to the return and the return participation adder that are relevant here and FERC never discusses, which leads to its fundamental error that somehow OCC's complaint would disrupt or modify those settlements. It wouldn't. And that's because the settlements set in place for set agreed upon periods of times, for Duke it's the base slash RTO return on equity. For First Energy, it's the return on equity value inclusive of any participation adder. Those dates 2017 and 18. But after those dates, there's nothing in the settlement that suggests changes on these particular issues that changes after these moratorium period are subject to anything other than the standard section 205 or section 206 process. And Duke confirmed in its brief that's how the settlements work on this issue. After these moratorium orders, default law applies. Now there's a dispute over default law. You've heard some of those arguments this morning. But the point here is that under default law, it's the same requirements, the same standards for OCC's complaint against Duke and First Energy as apply to its case against AEP that you heard this morning. And therefore, correctly explain that OCC did not need to show the entire existing rate was outside the zone of reasonableness in order to challenge this unlawful adder. It was sufficient under its section 206 burden. So what's the practical effect then? Are they charging the adder now and it would go away? Yes, that's absolutely right.  And the settlement goes – why are there end dates for the settlement? Why are they – I mean, you would renegotiate, wouldn't you? Or they would just – somebody would have to challenge it? I'm confused about why the settlement that's over is at issue then. Yeah, so the settlement addresses different elements of the settlement differently. So there are parts of the settlement that don't have these 2017-2018 moratorium period. But on return on equity, the deal the parties reached was there won't be challenges on this issue until after this date. We're going to lock in the return, inclusive of the participation adder, for this agreed upon amount of time. But after that, it's subject to normal change by the utility under section 205 of the Federal Power Act or challenged by the customers under section 206 on this particular issue. And this also gets to why FERC's wrong to argue its orders are consistent with its policy of encouraging settlements because it's actually the FERC orders that are modifying the agreement struck by imposing this different standard once we get upon these agreed upon moratorium periods on this particular issue of return and return on equity participation adder. Can you give me a sense, counsel, and maybe this is a better question for FERC, but what is usually the span of a range of reasonableness? And what would 50 points be in that span? So before I get to that span, there's a difference in the D.C. Circuit's difference between the section 206 just and reasonable standard, which depends on the particulars of the case, and FERC's kind of more technical return on equity value analysis, where its methodology is frankly in flux right now, but where it comes up with a range of return on equities. So here, consistent with that precedent, one way to show an existing rate is unjust and unreasonable is to show it's entirely outside of that zone. That's not the only way to meet the section 206 standard. So here, showing that they're charging customers higher rates solely because of this, this single identifiable discrete part of their rates that they're not qualified to receive, that meets that standard. FERC explained that with AEP. Just on the factual question, it varies a lot. It depends on FERC's methodology. There's no question removing the 50 basis points is somehow going to put it below the zone of reasonableness, but it's usually a couple percentage points, maybe four, five, six, something like that. Thank you. Good morning again. I'll just begin briefly with this argument about the moratorium. I don't think you'll find anything in the orders about it, because as far as I can tell, it was not raised by any party on rehearing, which is a jurisdictional requirement, and this court cannot consider objections that were not raised. That's under Section 313B. I don't recall seeing it until a brief mention in Buckeye's first brief, and then it really goes into it in the reply brief, which is why we also haven't responded to that in our brief. But to be clear about what a moratorium means, and these are not a simple settlement between a couple of parties. These were multi-party. They have the utilities. They have the wholesale customers. They have representatives. They can have representatives. I don't know whether the Consumers Council was involved in these or not, but they can be. It can be state regulars, all sorts of parties, all the parties to a proceeding, really. And we can talk more about these settlements, but what a moratorium provision means is not that the settlement agreement expires in 2017 or 2018. These rates can stay in effect in perpetuity until the utility itself chooses to choose them and makes the just and reasonable showing that's required under Section 205, or a party challenges. And so, yeah, the parties to the settlement were barred by the settlement from raising such a complaint, and the utility was barred from trying to change its own rates until the end of that moratorium date. But after the expiration of the moratorium, the settlement still lives unless and until it is changed pursuant to the Federal Power Act. And so no one's argued that OCC couldn't bring this complaint in this case. But the standard that they have to meet remains Section 206, and that's where the Commission's reasoning here. It wasn't applying a different standard, and it wasn't saying you can't bring this because of a moratorium. It wasn't saying any of that. It was saying that you... If there's a moratorium on your ability to challenge, and we're outside of that moratorium, why are the details of the settlement relevant in terms of it would be too complicated? In other words, isn't everything on the table after the moratorium? So 50 points is out there, and you obviously don't think they should be getting the 50 points, as you just argued. So why are they getting the 50 points? Just because the parties can now bring filings because the moratorium is over, the Commission still respects the terms of the settlement unless and until it is changed. And so they have to meet the standard. The complainants have to meet the standard under Section 206 of showing that it's unjust and unreasonable. So the reason that the Commission looked to... And I can explain how its pro-settlement policy is about benefit to consumers as well. So we were talking about the purpose of benefiting the consumers, and the adders have to be for that benefit. But the pro-settlement policy, which goes back decades, that benefits... I mean, the D.C. Circuit held that it serves the public interest because these rate cases can be huge and long and hotly litigated, and resolving them in a way that provides rate certainty, and especially here where we have uncontested settlements. Because there are situations where one or two parties are still unhappy. The Commission has rules for how it has to deal with that. But the cleanest resolution is one where all the parties who came at it from all different angles and have all different interests find a balance that they can live with, and that they submit as an uncontested settlement, and then the Commission says whether it finds it fair and reasonable in the public interest. And sometimes it will still reject an uncontested settlement, but it encourages you to reach those. And once you have, the Commission is loathe to disrupt whatever those balances and trade-offs that maybe a dozen, maybe more parties made without a really good reason. And so the difference here, the Commission applied the Section 206, and I know we always use the FPA terms instead of the 16 U.S.C., because I always forget, I think it's 824 E. That standard applies regardless, but how the Commission applies it can be different. So with the AEP adder, the Commission had granted the AEP companies the adder. As a standalone, we find on the merits this is just and reasonable. And AEP was then entitled to it going forward. It could have it in whatever rate case it had included that request for. But presumably that was part of their negotiating position in the later settlement, right? I know I have this 50 points approved, so let's negotiate a settlement. But I have this in my pocket. The other side knows that you do, too, and you negotiate around that. But they were entitled to it. And, in fact, the Commission had only set the base return on equity for negotiation, because that was already a done deal. You already had that. Right. But what I'm saying is, isn't the settlement with AEP, even though you had approved the 50 points beforehand, isn't it the same idea that it's a comprehensive settlement that involves a lot of stuff and it would be hard to disentangle it and all of this stuff? I mean, that would apply equally to all three of them, doesn't it? Because they all entered into settlement. So we would treat them the same. I mean, the Commission had said you're entitled to the adder AEP, because, you know, you made your showing. No one disputed it, so we didn't even have an issue of the voluntariness at the time, because no one, as far as I can tell, opposed it at the time. Like I said, I don't think anybody opposed this until the California Commission in 2014. So you have it. You have it in hand. You have it for all future ones, even if, I don't know why they would, maybe they would choose to negotiate it away, but that's not what the Commission set for settlement. The Commission said, here's your adder. The base return on equity issues, which were still disputed, are set for hearing in front of an ALJ and potentially settlement. The ALJ tries to shepherd settlement negotiations. You already have it, and you have it not just for this case. You have it for the later case. That's why in 2018, when they had some other rate case, they already had the adder. They didn't have to ask for it again. They had it until the Commission took it away on a single-issue basis, the same way it had taken away a different incentive in the international transmission case, because the Commission said in Order 679, you can apply for all of these different incentives on a single-issue basis and we'll grant it that way if you want to do it that way. But if the Commission can grant it on a single-issue basis, it makes sense to take it away on the same basis. So the Commission did make a Section 206 Step 1 finding as to AEP. It said, I can find the page if you want me to, but it said it is no longer just a reasonable fee. Okay, so maybe I'm being simplistic here. So why can't you just say to the other two, we're going to take your 50 points away too? Because we never gave it to them. They never asked us for it. It's not disputed that their rates right now reflect RTE. They only have it because they did negotiate it in a settlement, but we never gave it to them so we don't take away something we didn't give. And I know it seems overly... By approving the settlement that included a 50-point adder, you're not giving them a 50-point adder? No, because we never said you're entitled to the adder. For instance, if Duke files another rate settlement, if AEP files another rate case tomorrow, well, not tomorrow because they've had it taken away, but before this case, AEP comes in with a rate case, it's 2018, the adder's a done deal. We already decided it in 2008 or 2010, depending which AEP entity we're talking about. If Duke comes in in 2018 with a new rate case, they have nothing. We never granted it to them. It was not approved. So they could ask for an adder. So in your hypo, that company could ask for an adder because you had never given them an adder? That's right. And because there's a presumption that can be rebutted, perhaps a party like OCC could come in and say they already have it, or maybe the Commission would say something like, you're entitled to it, we're not going to add it on top of your settlement where you seem to have gotten it by negotiation. Isn't everyone treating it like these settlement rates have the adder? I mean, even FERC and using these groups and their proxies is taking out, separating the ROE and the adder from these settlement amounts. I mean, I think to Judge Nalbandian's points, it's like, and to your own point that the adder was presumptive 50 points if you were part of an RTO until the Ninth Circuit said otherwise. I mean, this is just like base understanding with every single negotiation going on, and it's base understanding as the settlement comes out. Well, and just stepping it back again to note that the question is here, the issue is did the Commission inexplicably depart from its precedent? I can't speak now, precedent. The Commission, the reason that it gave for treating these differently is because we didn't give the adder. That is the reason, and form matters as we see from the San Diego case. I see I'm out of time, but I did want to point to the San Diego case where the petitioners in that case said we're entitled to this adder. We meet all the requirements. You put it in the regulation. It's practically like a contract offer that we accepted. That's the argument they made to the court, and the D.C. Circuit said no. Order 679 says in paragraph 1, I think, you have nothing until you ask for it and the Commission grants it. No matter how, and it said in the RTO section, nothing is given. You have to ask for it. The Commission has to approve it. So the form matters. Your time is up. I just want to ask you one other question about the text of Section 206. Why is it that FERC can take away things on, like, a single-issue basis or challenge just one part of it, whereas, like, OCC and others can't? As I read the section, it says, you know, It doesn't seem by its plain text to say you've got to find the entire thing unjust, unreasonable, or unduly discriminatory, right? And FERC is saying, hey, we don't need to make a determination that the rate writ large with ROE plus the adder is unjust and unreasonable. We can just look to see if the adder is unjust and reasonable for AEP, for example. Why can't OCC do that? Is there something in 206 that says you have a different rule? No, it was the Commission's policy decision that when we've granted it on a single-issue basis, we can reconsider it or take it away on a single-issue basis. And that's the international transmission case. It wasn't an RTO adder. It was a different kind of adder. And we took it away, and then as a replacement rate, we gave part of it back. But if you can do it as a matter of policy, right, because it's, I mean, I assume your policy comports with 206, and based on the text I just read, right, then why can't they do it under 206? It's just your policy to not give them the ability to bring this under the full language of 206? And this is why the Commission made the policy judgment that it would only look at these settlement rates as a whole rather than the piece, because we never granted the piece. We never granted them the piece, so we can't take it away on that same basis. So the Commission said that complainants would have to make a showing that the rate as a whole is no longer just and reasonable, and it did note in the orders that they made no effort to do that as to the entire rate. As to AEP, FERC found that the rate was unjust and unreasonable under 206, not because it was out of the range of reasonableness or anything like that, but because it had an adder that they weren't supposed to have. Right. So why can't, because OCC say, not that you gave them an adder, but that there's an adder baked in that they're not supposed to have. Well, they baked in an adder that they may have negotiated for, but the Commission had never instituted that adder as something that they were entitled to that was just and reasonable under Section 205. So that is how the Commission looked at it. So it is the 206 standard, but what is the rate? Well, why would you approve a settlement that has something in it that you didn't think should be there? I mean, you thought it was okay. This goes to Judge Moore's question, I guess. Didn't you implicitly agree with the adder by approving a settlement that everybody agrees had that component in it? Well, when the Commission approved it, the fair and reasonable in the public interest, the Commission says outright, this isn't precedent for anything, which means even if the Commission had said there seems to be an adder in here, we haven't analyzed it ourselves, we haven't granted it, but it seems to be here, that's not precedent for anything, which again means they come in with the next rate case, they have nothing, because we never granted that adder. But presumably it's not fair, reasonable, and in the public interest if it has an adder it shouldn't have. When it came in as an uncontested settlement, nobody was trying to rebut the presumption. Somebody's bringing it up now. Well, nobody was rebutting the presumption, the Commission just didn't make the determination as to the different elements. It just looked at whether the overall settlement, which was uncontested, and the D.C. Circuit said in the United Municipal Distributors case that when the Commission approves something as fair and reasonable in the public interest, it isn't setting the precedent for any piece of that. So you can get something else that isn't an adder, you get some other rate component in that. It doesn't mean you get it in the next case because it's not precedent for anything. And I know I'm way out of time, but I just want to point to the, toward the end of the San Diego opinion, the D.C. Circuit dealt with a similar issue in the abandonment case where they said, well, you granted it to these other parties with some retrospective effect. And the court said, if it wasn't disputed, there are often issues lurking in the record that the Commission doesn't rule on. It's not policy or precedent for anything. And that's just in line with the same thing that the court had said in the United Municipal Distributors. Thank you.  Thank you, Your Honors. Rates cannot go into effect unless FERC approves them. Here, settlement rates went into effect and FERC approved those settlement rates. Did FERC grant those RTO adders on a single issue basis? No, it did not. But Order 679 says that you can get the RTO adder in one of two ways. You can get it on a single issue basis or you can get it through a rate case. That's how First Energy and Duke got their adders. They got it through a settlement rate case. Now, that settlement rate case, think about there are several stated values in those cases. One is depreciation rates, one is rate of return, and one is the RTO adder. In this situation, FERC has said on many occasions, yes, it's okay to challenge the settlement rate with respect to just one stated value, which is the return. But here, FERC now says you cannot challenge just another stated value, which is the return. What is the implication, if you're right, does the settlement have to be renegotiated then? I mean, if I were them, I would say, okay, well, we've got to go back to the table. Is that right? No, sir, because the settlements were in effect, as we said. There was no requirement for a party that they couldn't challenge after those moratorium periods end. After those periods end, what you have is an existing rate. The settlement rate is the existing rate. But you're saying that we would take away, or FERC would take away 50 points going forward, and I take it the utility company would come back in and then ask for an increase in their rate? They could. Because now you've blown up our settlement. Absolutely. They have the right under Federal Power Act Section 205 to come in and file for a rate increase any time that they think that their revenues are insufficient to cover their cost. Here, the RTO adder is not a cost. The RTO adder is an incentive that's being added on top of rates, and what FERC is requiring is half the state of Ohio has the ability to avoid this because the utilities in Ohio are ineligible to it, and the other half of Ohio consumers have to continue to pay this simply because it was given as part of the settlement. And yet FERC routinely allows, in a formula rate settlement case like this, parties to challenge a single stated value. Are those examples in your brief? Those examples are in our brief. They are at page 44 of our brief, and it's the North Carolina Electric Membership Corporation versus Duke Energy Progress and Duke Energy Carolinas. There's also a Golden State, sorry, not Golden State. I'm trying to think. It's a Texas company. It's a cooperative, but it's in our brief.  We can look in your brief. Yes, look at my brief. But there's also a case cited in Buckeye's opening brief, and that is the North Carolina Eastern Municipal Power Company case, and there's actually a lot of cases that are on the FERC's website. There's a public service company in Colorado case where the parties challenged only the return on equity and not every other element of the settlement. Thank you. Thank you all for your evidence.